UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE K. BROWN,

        Petitioner,

                                    Case No. 1:09-cv-639

v.                                    Hon. Gordon J. Quist

LLOYD RAPELJE,

        Respondent.

_____/

### REPORT AND RECOMMENDATION

Petitioner, Bruce K. Brown, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the court on the amended petition (docket no. 4) and his motion for discovery (docket no. 35).

### I.      Background

On June 5, 2007, following a jury trial, petitioner was convicted of first-degree felony murder, M.C.L. § 750.316(1)(b), armed robbery, M.C.L. § 750.529, conspiracy to commit armed robbery, M.C.L. § 750.157a (conspiracy) and M.C.L. § 750.529 (armed robbery), first-degree home invasion, M.C.L. § 750.110a(2), and felony firearm, M.C.L. § 750.227b. *People v. Brown*, No. 280721 (Mich. App. Jan. 29, 2009), slip op. at p. 1; Trial Trans. V at pp. 893-96 (docket no.23); Judgment of Sentence (June 27, 2007) (docket no. 25). Due to double jeopardy concerns, the parties stipulated to vacate petitioner's convictions for first-degree home invasion and armed robbery. *People v. Brown*, No. 280721, slip op. at p. 1. Petitioner was sentenced to life imprisonment without parole for the first-degree felony murder. Judgment of Sentence (June 27, 2007) (docket no. 25).

Prior to this life sentence, petitioner was sentenced to serve consecutive sentences for the felony-firearm (24 months) and conspiracy to commit armed robbery (60 to 84 months). *Id.*

Petitioner, through counsel, appealed his convictions, raising the following issues in the Michigan Court of Appeals:

I.    Whether [petitioner's] convictions must be reversed because the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that [petitioner] committed the crimes or aided and abetted in their commission. Accordingly, the trial court erred in denying the motion for a directed verdict.

II.   Whether the trial court abused its discretion in admitting the hearsay statement of Santee Franklin as a co-conspirator exception to the hearsay rule because there was insufficient evidence of a conspiracy independent of the statement to permit its introduction.

Petitioner's Brief on Appeal (docket no. 25). The Michigan Court of Appeals affirmed the conviction on appeal. *People v. Brown*, No. 280721.

Petitioner, through counsel, raised the same two issues in his application for leave to appeal to the Michigan Supreme Court, which denied the application. *People v. Simmons*, No. 138477 (Mich. May 27, 2009). Brown's amended habeas petition raises these two issues. *See* Amended Petition (docket no. 4).

##    II.    Motion for discovery

As a preliminary matter, petitioner has filed a motion for discovery or evidentiary hearing. Petitioner's motion is governed by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." While federal habeas petitioners "have no right to automatic discovery," *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), a district court has the discretion to grant a party

discovery "upon a fact specific showing of good cause under Rule 6." *Id.*, *citing Bracy v. Gramley*, 520 U.S. 899 (1997). The moving party has the burden of demonstrating the materiality of the information requested. *Stanford*, 266 F.3d at 460.

Before addressing the question of whether a moving party is entitled to discovery under Rule 6(a), the court should first determine the "essential elements" of the relevant habeas claim. *See Bracy*, 520 U.S. at 903-04. Having determined the "essential elements" of the relevant claim, the court can then determine whether the moving party has shown "good cause" for discovery under Rule 6(a). "Good cause" is shown by the following test: "whether specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief. *Id.* at 908-09, *quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969). If so, then "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Id.*

Here, petitioner seeks discovery regarding an individual named Kareem Sullivan. As discussed below, Sullivan, sometimes referred to as "Young," was involved in the robbery and murder. Petitioner contends that he cannot be an aider and abettor to the crimes for which he was convicted, because there is no proof that the "principal", Sullivan, was ever convicted. "Unlike conspiracy and felony murder, which also allow the state to punish a person for the acts of another, aiding and abetting is not a separate substantive offense. Rather, being an aider and abettor is simply a theory of prosecution that permits the imposition of vicarious liability for accomplices." *People v. Robinson*, 475 Mich. 1, 6, 715 N.W.2d 44 (2006) (footnotes and quotation marks omitted).

Petitioner seeks discovery in the form of a court order to locate and produce the record of Sullivan's conviction or acquittal.

The essential elements of the relevant habeas claims appear in §§ III.A. and B., *infra*. Based on this record, petitioner has failed to demonstrate good cause for discovery. Petitioner was convicted for a conspiracy to commit armed robbery which involved co-conspirators including Sullivan and Santee Franklin. *See* § III.B., *infra*. Petitioner was convicted of first-degree felony murder, which is a separate offense imposing vicarious liability on an accomplice other than the aiding and abetting theory. *See Robinson*, 475 Mich. at 6. Finally, petitioner was convicted of felony firearm, a conviction supported by testimony that he possessed a firearm while committing another felony. *See* § III.A., *infra*. An investigation into Sullivan's criminal history would not result in a grant of habeas relief for petitioner. Sufficient evidence supports petitioner's convictions regardless of whether Sullivan was ever prosecuted for these crimes. Accordingly, petitioner's motion for discovery (docket no. 35) will be Denied. A separate order will issue contemporaneously.

### III.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted the issues raised in his amended petition.

4

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, -- F.3d --, 2011 WL 3903439 at *5 (6th Cir. Sept. 7, 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 411.  Rather, to grant habeas relief, the state court's application

of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct.  28

U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence that the state court's determination was erroneous.  *Magana v.

Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).  The presumption of correctness accorded to a state

court's findings of fact on federal habeas review also applies to the factual findings of a state

appellate court based on the state trial record.  *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV.  Discussion

### A.  Whether petitioner's convictions must be reversed because the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that petitioner committed the crimes or aided and abetted in their commission.

Petitioner contends that there was insufficient evidence to support his conviction.

In this regard, petitioner contends that there was insufficient evidence: that he committed the

charged crimes; that there was an agreement to commit a crime; and that he aided and abetted any

of the crimes charge.  *See* Legal Argument (docket no. 4-2 at pp. 11-17).

The Michigan Court of Appeals addressed this issue as follows:

> Defendant first argues that there was insufficient evidence to uphold his convictions.  Specifically, defendant argues that the prosecution failed to prove that defendant was the person who committed these crimes.  We disagree.  We review de novo a challenge to the sufficiency of the evidence in a criminal case, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find beyond a reasonable doubt that all essential elements of the prosecution's case were proven.  *People v. Aldrich*, 246 Mich.App. 101, 122, 631 N.W.2d 67 (2001).  We draw all reasonable inferences and resolve credibility issues in favor of the jury verdict.  *People v. Nowack*, 462 Mich. 392, 400, 614 N.W.2d 78 (2000).

Identity is an essential element of every crime.  *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976).  The prosecution must present sufficient evidence that proves beyond a reasonable doubt that the accused committed the crimes alleged.  *People v. Kern*, 6 Mich.App. 406, 409, 149 N.W.2d 216 (1967).  "Identity may be shown by either direct testimony or circumstantial evidence which gives the jury an abiding conviction to a moral certainty that the accused was the perpetrator of the offense." *Id.* at 409-410, 149 N.W.2d 216.

In this case, the prosecution presented sufficient evidence upon which a rational trier of fact could conclude beyond a reasonable doubt that defendant was guilty of all crimes charged either as a principal or an aider and abettor.  The prosecution presented direct evidence which placed defendant and his accomplice at decedent's apartment complex when the crimes were committed.  There was also direct evidence that defendant possessed a nine-millimeter gun and his accomplice possessed a .22 caliber long pistol.  Decedent was shot with a .22 caliber gun.  One witness testified that defendant's accomplice admitted he had shot decedent with his gun.  Additionally, another witness testified that when she accused defendant of killing decedent, he said, "I know."   The prosecution also presented strong circumstantial evidence that defendant and his accomplice broke into decedent's apartment.  Both defendant and his accomplice matched the description the surviving victim gave of the men that robbed her and shot the victim who died.  There was evidence that defendant's accomplice was seen carrying some of the items the victim said were stolen from her and the decedent's home.

*People v. Brown*, No. 280721, slip o. at pp. 1-2.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364.  Sufficient evidence supports a conviction if  "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added).  In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's

7

verdict. *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Viewing the facts in the light most favorable to the prosecution, petitioner's convictions were supported by sufficient evidence. Two witnesses, Ruth Morcom and Lamar Hicks, testified that petitioner was speaking to "Young" (Kareem Sullivan) and Santee Franklin at a party early in the morning of August 5, 2006. Trial Trans. II at pp. 384-85 (docket no. 20); Trial Trans. III at pp. 526-27(docket no. 21).[1] Franklin told Hicks that petitioner and Sullivan "was going to get that nigger," which Hicks interpreted as an intention to rob the victim (Ronald Wells). *Id.* at pp. 529-30. The victim and Jessica Lynch lived together and had moved to a new apartment about two weeks before the murder. Trial Trans. II at pp. 222-26. Lynch testified that Franklin was one of the few people that knew where the victim had moved and that the victim stored money in a broken DVD player. *Id.* at pp. 248-49, 257-58. Morcom testified that at around 3:30 or 4:00 a.m., petitioner, Hicks, Franklin and Sullivan were talking. *Id.* at pp. 384-85. After this meeting, petitioner was able to provide Morcom with directions to the victim's apartment. *Id.* at p. 390.

Hicks testified that petitioner had a 9-mm automatic handgun, which petitioner carried in his pocket. Trial Trans. III at pp. 536-37. Sullivan had hidden a .22 caliber handgun at Hicks' house. *Id.* at pp. 530-35. Morcom drove them to the house where Hicks retrieved the handgun. *Id.* Then, Morcom drove petitioner, Sullivan and Hicks to the victim's apartment complex on Aurelius Road. Trial Trans. II at pp. 390-91. During the drive, Hicks received a telephone call

---

[1] Some of the witnesses referred to an individual named "Young." The police identified "Young" as "Kareem Sullivan." Trial Trans. IV at pp. 706-07 (docket no. 22).

from Franklin telling him to tell petitioner "don't forget to get the brown box out of the closet."
Trial Trans. III at p. 538.  Once they arrived at the apartment complex, petitioner and Sullivan got
out of the car.  *Id.* at p. 392.  At that time, petitioner was wearing a blue shirt and jeans and was
accompanied by Sullivan, who was wearing a red shirt.  Trial Trans. III at pp. 498-99; Trial Trans.
IV at pp. 607-08 (docket no. 22).

Lynch testified that two men broke down the door of the victim's apartment at about
5:00 a.m. on August 5, 2006.  Trial Trans. II at p. 226.  Lynch further testified that a man in blue
entered the bedroom, turned on the light switch and shot the victim in the left side of the chest.  *Id.*
at pp. 229-30.  A second intruder followed, who was shorter and darker than the first intruder, had
short hair and was wearing a red shirt.  *Id.* at p. 231.  The man in the blue shirt ran over to the victim
and yelled "Where's it at?  Give me the money.  Give me the drugs."  *Id.* at p. 233.  The intruders
took, among other things, a broken DVD player in which the victim hid money, "stuff" sitting on
the television, a purple Crown Royal bag and cash from Lynch's purse.  *Id.* at pp. 236-37.  The
robbery took only a minute or two.  *Id.* at p. 237.

Morcom testified that five to ten minutes after petitioner and Sullivan left the car,
the two men ran out of the apartment complex.  *Id.* at p. 394.  Petitioner was holding a handgun, got
into the front seat and yelled "Hurry up.  Get the hell out of here.  Drive."  *Id.* at pp. 394-95.
According to Hicks, petitioner was wearing a blue shirt, and Sullivan was wearing a red shirt and
carrying "a whole bunch of stuff."  Trial Trans. III at pp. 542-43.  Sullivan told Hicks that "I hit him
in the shoulder."  *Id.*  Morcom drove them to her apartment.  Trial Trans. II at pp. 396-99.

Later that morning, Lakesha Ewulomi (a friend of petitioner), drove petitioner,
Sullivan and petitioner's brother (Jonathan Brown) to her apartment.  Trial Trans. IV at p. 740.

9

Petitioner and one of the men washed their hands, and said that they had to wash off the gunpowder. *Id.* at pp. 740, 755. At about 7:00 a.m. Ewulomi took them to the Capital Area Transportation Authority bus station so they could take a bus to New York. *Id.* at pp. 741-42. After they boarded the bus, petitioner called Ewulomi and told her to watch the news. *Id.* at pp. 746-47. Petitioner called Ewulomi two more times that afternoon and asked her to watch the news and "tell him what they were saying." *Id.* at p. 747. When Ewulomi told petitioner that the murder on Aurelius Road was on the news, petitioner told her to keep watching. *Id.* Petitioner continued to call Ewulomi on a daily basis for about a month and she continued to give petitioner updates on the victim's murder. *Id.* at pp. 748-49. Ewulomi changed her telephone number after petitioner threatened her. *Id.* at pp. 749-50.

Morcom testified that on the morning of August 5th, she learned from a neighbor that the victim, a friend of hers, had been killed. Trial Trans. II at pp. 403-04. From this information, Morcom concluded that the gunshots that she heard at the apartment complex on Aurelius Road were petitioner and Sullivan shooting and killing the victim. *Id.* Morcom testified that the next day, petitioner called her, at which time she told petitioner "[y]ou just killed a good friend of mine" to which petitioner replied "I know." *Id.* at p. 404. Morcom testified that if she knew what petitioner intended to do (i.e., kill the victim), then she would not have given him a ride. *Id.* at pp. 404-05. Morcom hung up the telephone and did not talk to petitioner, explaining "he [petitioner] just basically defied me, asked me for a ride to go get weed and turned around and killed a really good friend of mine in the process." *Id.* at p. 405. That same morning, at about 11:30 or 11:45 a.m., Franklin called Hicks, told him that the victim had died, and then directed Hicks to call petitioner and Sullivan to see where they were. Trial Trans. III at p. 556. Hicks called petitioner, who was

10

surprised to hear that the victim had died and asked Hicks to "keep him informed on what's going on." *Id.* at pp. 556-57.

Petitioner makes three contentions regarding insufficient evidence. First, petitioner contends that there was insufficient evidence that he committed the charged crimes. Specifically, petitioner contends that "there was not even evidence that petitioner was found in possession of stolen property." Legal Argument (docket no. 4-2 at p. 13). Petitioner, however, fails to address the direct and circumstantial evidence presented at trial which placed him petitioner at the victim's apartment at the time of the armed robbery and murder. Furthermore, petitioner admitted to Ms. Morcom that he killed the victim.

Second, with respect to the conviction for conspiracy to commit armed robbery, M.C.L. § 750.157a, petitioner contends that there was insufficient evidence of an agreement to commit any crime. However, petitioner does not address the conspiracy statute or the underlying facts, stating only that there was "insufficient evidence to find beyond a reasonable doubt that petitioner made an agreement with anyone to accomplish an illegal objective." Legal Argument (docket no. 4-2 at p. 15).

"To prove conspiracy to commit armed robbery, the prosecution must prove that two or more people agreed to commit an armed robbery, with the specific intent to accomplish the robbery." *People v. Solernorona*, No. 299269, 2012 WL 1521444 at *4 (Mich. App. May 1, 2012), citing M.C.L. § 750.157a and *People v. Mass*, 464 Mich. 625, 629, 628 N.W.2d 540 (2001). "The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v. Smith*, 478 Mich. 292, 319, 733 N.W.2d 351 (2007). Viewing the evidence in the light most favorable to the

prosecution, the record established that petitioner was engaged with Franklin and others in a conspiracy to commit armed robbery and that they in fact accomplished the purpose of that conspiracy.

Finally, petitioner contends that there is no evidence that he aided and abetted in the commission of any of the offenses.  Legal Argument (docket no. 4-2 at p. 15).  Petitioner also maintains that he cannot be held vicariously liable.  *Id.*  Both assertions are incorrect, as will be seen below.

Petitioner relies on M.C.L. § 767.39, which provides as follows:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

M.C.L. § 767.39; Legal Argument (docket no. 4-2 at p. 15).  To establish guilt under an aiding and abetting theory under Michigan law, the prosecution must show that "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement."  *People v. Carines*,  460 Mich. 750, 768, 597 N.W.2d 130 (1999).

The trial judge instructed the jury that they could convict petitioner of the crimes if they found that he aided in the commission of two of the charged crimes, stating pertinent part:

> The [petitioner] must have been either committing or helping someone else commit the crime of armed robbery and/or home invasion, first degree.  To help means to perform acts or give encouragement before or during the commission of the crime that aids or assists in its commission.

> At the time of giving aid or encouragement, the [petitioner] must have intended the commission of the armed robbery and/or home invasion, first degree.

12

Trial Trans. V at p. 875 (docket no. 23).

As an initial matter, the aiding and abetting instruction given by the judge applied to petitioner's convictions for armed robbery and home invasion. Because both of these convictions were vacated, petitioner's claim of error with respect to the aiding and abetting instruction are moot.

Nevertheless, the court shall address petitioner's claims that he was not involved as an accomplice in three crimes for which he was convicted. As discussed, *supra*, sufficient evidence exists to support the finding that petitioner was guilty on the conspiracy to commit armed robbery. Because petitioner was a co-conspirator, a theory of vicarious liability is inapplicable to that crime.

The elements of felony-firearm, M.C.L. § 750.227b, "are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Crenshaw*, No. 301668, 2012 WL 1192172 at *5 (Mich. App. April 10, 2012), citing *People v. Taylor*, 275 Mich. App 177, 179, 737 NW2d 790 (2007). As discussed, *supra*, the evidence established that both petitioner and Sullivan possessed handguns when they committed the crimes. Viewing this evidence in the light most favorable to the prosecution, sufficient evidence exists to support this conviction without utilizing a theory of vicarious liability.

Finally, felony murder is a separate offense which imposes vicarious liability on an accomplice independent of an aider and abettor theory. *See Robinson*, 475 Mich. at 6. The elements of first-degree felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute [which includes armed robbery]. *Smith*, 478 Mich. at 318-19; *Carines*, 460

Mich. at 759.   Viewing the evidence in the light most favorable to the prosecution, the record established that sufficient evidence supports the felony murder conviction.  Specifically, petitioner participated in a conspiracy to commit armed robbery, during which the victim was shot and killed.

Based on this record, the Michigan Court of Appeals properly found that sufficient evidence supported petitioner's convictions for first-degree felony murder, felony-firearm and conspiracy to commit armed robbery.  The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

> ### B.     Whether the trial court abused its discretion in admitting the hearsay statement of Santee Franklin as a co-conspirator exception to the hearsay rule because there was insufficient evidence of a conspiracy independent of the statement to permit its introduction.

Petitioner contends that the court abused its discretion in admitting the hearsay statement of a co-conspirator, Santee Franklin.  The Michigan Court of Appeals addressed this issue as follows:

> Lastly, defendant argues that the trial court abused its discretion when it admitted into evidence a hearsay statement over defense objection.  We disagree.

> We review the trial court's decision to admit evidence for an abuse of discretion.  *People v. Hine*, 467 Mich. 242, 250, 650 N.W.2d 659 (2002).  But, "when the admission of evidence involves a preliminary question of law, such as whether a . . . rule of evidence precludes the admissibility of evidence, the issue is reviewed de novo."  *People v. Washington*, 468 Mich. 667, 670-671, 664 N.W.2d 203 (2003).

> Under the Michigan Rules of Evidence hearsay is not admissible unless it falls within one of the recognized exceptions or exclusions set forth in MRE 802.  Hearsay is defined as "a statement, other than the one made by the declarant while

14

testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c).

It is apparent that the trial court admitted the hearsay at issue pursuant to MRE 801(d)(2)(E), which provides that statements made "by a coconspirator or a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy" are not hearsay.  Defendant argues that this was error because the prosecution failed to produce independent evidence that defendant entered into an agreement with Santee Franklin, the alleged co-conspirator, to commit a crime.

A party claiming a statement is admissible under this exclusion must establish three things.  "First, the proponent must establish by a preponderance of the evidence that a conspiracy existed through independent evidence."  *People v. Martin*, 271 Mich.App. 280, 316-317, 721 N.W.2d 815 (2006).  Second, the proponent of the statement must establish that it "was made during the course of the conspiracy."  *Id.* at 317, 721 N.W.2d 815.  "Third, the proponent must establish that the statement furthered the conspiracy."  *Id.*

Here, before the admission of the hearsay, the prosecution presented strong circumstantial evidence that defendant and Franklin were involved in a conspiracy.  Decedent had moved to his new apartment only two weeks before the date of the incident.  Relatively few people knew where decedent had moved, but Franklin was one of those people.  Further, defendant and Franklin were seen having a discussion on the night of the incident.  Afterwards, defendant was able to give directions to decedent's apartment complex.  Defendant matched the description of one of the men who broke into decedent's apartment.  There was also evidence that defendant's accomplice matched the description of the other man who broke into decedent's apartment and was seen carrying some of the items stolen from decedent's apartment.  Among these items was a broken DVD player in which decedent kept money.  There was testimony that Franklin was one of the few people who knew that decedent kept money in the broken DVD player.  From this evidence, a reasonable inference could be made that defendant conspired with Franklin to rob decedent.  Therefore, the trial court did not abuse its discretion in admitting the testimony at issue under MRE 801(d)(2)(E).

*People v. Brown*, No. 280721, slip op. at pp. 2-3.

Federal habeas review is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"[F]ederal habeas corpus relief does not lie for errors of State law."  *Id.* at 67, *quoting Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990).  "Trial court errors in state procedure and/or evidentiary law do

not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."   *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), citing *Estelle*, 502 U.S. at 69-70.   Here, the Michigan Court of Appeals determined that Franklin's testimony did not violate the state's hearsay rule, and this decision was not reversed by the Michigan Supreme Court.   Petitioner has not shown to the contrary.   To the extent that the Michigan courts have found sufficient evidence to show that a conspiracy existed, and petitioner was part of it, that finding must be presumed to be correct, 28 U.S.C. § 2254(e)(1), *supra,* and the presumption has not been rebutted.   *Magana v. Hofbauer, supra.*

Nor has petitioner  argued a constitutional error in this regard in either his state appeal or his federal habeas action.   The Michigan Courts treated the hearsay issue as a matter of state law.   Petitioner has not identified a Fourteenth Amendment issue with respect to the trial court's ruling. The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).   "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."   *Estelle*, 502 U.S. at 67-68.   Federal habeas courts do not act as "super-appellate state courts" in determining issues of state law.   *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002).

Accordingly, petitioner's claim regarding the admission of hearsay evidence at trial is not cognizable on federal habeas review.

## V.      Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**.

Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  August 3, 2012                          /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).